UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
TIGER SUGAR FRANCHISE USA INC.,

                Plaintiff,

      -against-

WIN LUCK TRADING INC.,

                Defendant.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22 CV 3724 (ARR) (CLP)

**POLLAK**, United States Magistrate Judge:

On June 23, 2022, plaintiff Tiger Sugar Franchise USA Inc. ("Tiger Sugar" or "plaintiff") commenced this action against defendant Win Luck Trading Inc. ("defendant" or "Win Luck NY"). (Compl.[1]). On June 24, 2022, plaintiff filed its First Amended Complaint ("FAC"). (ECF No. 2). Plaintiff brings trademark infringement and related claims. (FAC ¶ 3; Pl.'s Mem. Supp. D.J.[2] at 1).

Currently pending before this Court, on referral from the district court, is: (1) plaintiff's motion for default judgment and attorney's fees and costs (the "Motion for Default Judgment") (ECF No. 13); (2) a motion, filed by a New Jersey company also bearing the name of Win Luck Trading Inc. ("Win Luck NJ"), to vacate the Clerk's entry of default (the "Motion to Vacate") (ECF No. 21); and (3) Win Luck NJ's related motion to dismiss this action for lack of personal jurisdiction (the "Motion to Dismiss") (ECF No. 21-6). For the reasons set forth below, the Court respectfully recommends that the district court: (1) deny both of Win Luck NJ's Motions; (2) deny plaintiff's Motion for Default Judgment; and (3) grant plaintiff leave to file a Second

---

[1] Citations to "Compl." refer to the original Complaint filed by plaintiff on June 23, 2022. (ECF No. 1).
[2] Citations to "Pl.'s Mem. Supp. D.J." refer to the Memorandum of Law in Support of Plaintiff's Motion for Default Judgment filed on March 30, 2023. (ECF No. 13).

Amended Complaint within thirty days of the district court's order adopting this Report and Recommendation.

BACKGROUND

Plaintiff is the American subsidiary of a Taiwanese company, Tiger Sugar International Enterprise Co. Ltd. ("Tiger Sugar Taiwan"), that produces and sells food and beverage products under the brand and trademark "Tiger Sugar," including "Black Sugar Boba Milk Ice Cream Bar, Black Sugar Popcorn, and Black Sugar Sesame Rice Ball," all of which stem from its introduction of the popular beverage "Black Sugar Boba Milk Tea" in 2017.  (FAC ¶¶ 1–2; see also id. ¶¶ 5–7, 12).  Tiger Sugar Taiwan has held trademarks affiliated with its brand since 2020 (the "Tiger Sugar Trademarks") and has assigned all of its rights with respect to those marks to plaintiff.  (Id. ¶ 2).[3]  Plaintiff therefore has "exclusive rights . . . to use the Tiger Sugar Trademark[s] in the United States" and to "protect [said] trademark in the United States."  (FAC ¶ 7).  Plaintiff purportedly "spent significant monies on advertising and promotions . . . over the past three years," and claims to have gained widespread recognition, as well as a reputation for quality, as a result.  (Id. ¶¶ 15–17).

Plaintiff alleges that defendant Win Luck NY is a New York-based company that "purchased and imported counterfeit products from foreign manufacturers and sold counterfeit Tigersugar Products throughout the United States."  (Id. ¶¶ 2, 8).  Specifically, plaintiff alleges that it has discovered "a series of [c]ounterfeit [p]roducts bearing counterfeits or colorable imitations of the Tiger Sugar Trademark[s]" for sale in the United States.  (Id. ¶¶ 19–20).  Plaintiff first discovered those allegedly counterfeit products at Island of Gold Supermarket ("I.O.G.") in Fresh Meadows, New York.  (Id. ¶ 21).  Upon plaintiff's request, I.O.G. provided a

---

[3] The Tiger Sugar Trademarks are registered with the United States Patent and Trademark Office with the registration numbers 5795702, 6296032, 6367332, 6367341.  (Id. ¶¶ 2, 18; see also Pl.'s Ex. A (ECF No. 2-1))

purchase invoice dated September 13, 2021, indicating that the counterfeit products were purchased from one Win Luck Trading Inc., located at 100 Pulaski Street in Bayonne, New Jersey 07002.  (Id. ¶ 22; see also Pl.'s Ex. B (ECF No. 2-2).

According to plaintiff, the New Jersey address listed on the invoice is tied to a warehouse owned by Win Luck NY.  (FAC ¶ 9).  Thus, plaintiff alleges, the invoice demonstrates that the infringing products were sold to I.O.G. by Win Luck NY.  (Id. ¶ 22).  Plaintiff further alleges that Win Luck NY continued to sell counterfeit products bearing the Tiger Sugar Trademarks after plaintiff sent a cease and desist letter to the Bayonne, New Jersey address listed on the invoice.  (Id. ¶ 23).  Plaintiff does not, however, allege that a copy of said letter was sent to Win Luck NY's registered address in Brooklyn, New York.  (See Pl.'s Ex. C (ECF No. 2-3) (listing only the Bayonne, New Jersey address)).[4]

Plaintiff asserts that as a result of Win Luck NY's conduct, the Tiger Sugar Trademarks "are being irreparably harmed" in a manner "likely to injure [Tiger Sugar's] goodwill and reputation."  (FAC ¶¶ 31–34).  Plaintiff claims to have suffered $11,139,184.26 in losses to business and brand, and an additional $7,846,518.73 in forward-looking damages (i.e., lost sales during the period of infringement).  (Pl.'s Mem. Supp. D.J. at 4).  The First Amended Complaint states the following causes of action: (1) trademark infringement under 15 U.S.C. § 1114(1), New York General Business Law ("NYGBL") § 360-K, and New York Common Law (FAC ¶¶ 35–41, 50–55, 61–68); (2) unfair competition under 15 U.S.C. § 1125(a) and New York Common Law (id. ¶¶ 42–46, 61–68); (3) dilution under 15 U.S.C. § 1125(c) and NYGBL § 360-L (id. ¶¶ 47–49, 56–60); and for Unlawful Deceptive Acts and Practices under NYGBL § 349 (id. ¶¶ 69–76).

---

[4] However, the First Amended Complaint was purportedly served on Win Luck NY via the Office of the Secretary of State of the State of New York.  (ECF No. 8).

## PROCEDURAL HISTORY

I.    Default and Plaintiff's Motion

Plaintiff purportedly served the First Amended Complaint on the defendant on August 19, 2022, via the New York State Secretary of State.  (See ECF No. 8).  Defendant was accordingly given until September 9, 2022, to file an answer or otherwise respond to the First Amended Complaint.  (Id.)  Defendant did not do so, and on October 25, 2022, plaintiff requested a certificate of default against defendant.  (ECF No. 11).  The Clerk of the Court entered default on October 28, 2022 (ECF No. 12), and plaintiff moved for default judgment and damages on March 30, 2023.  (Notice of Motion (ECF No. 13-1)).  The Honorable Allyne R. Ross then referred the Motion for Default Judgment to the undersigned for Report and Recommendation.  (See Order, dated March 31, 2023).

II.    The Court's Inquest Order

On October 31, 2023, after reviewing plaintiff's papers in support of the Motion, this Court issued an order finding that plaintiff had not filed sufficient documentation to permit the Court to assess the damages requested (the "Inquest Order").  (ECF No. 15).  Specifically, the Court noted that plaintiff had not filed any records corroborating the alleged $11,139,184.26 in losses to business and brand or the additional $7,846,518.73 alleged forward-looking damages. (Inquest Order at 2 (citing Pl.'s Mem. Supp. D.J. at 4)).  Instead, plaintiff had relied entirely on information derived from an affidavit of Yang Ming Tsung, the CEO of Tiger Sugar (ECF No. 13-12), to calculate both figures without providing any of the documentation necessary for the Court to verify the accuracy of his numbers.  (Inquest Order at 2 (citing Pl.'s Mem. Supp. D.J. at 4–5)).

4

The Court also noted several other issues with plaintiff's Motion, including that:

1) Plaintiff did not provide any authority in support of its assertion about how to calculate the "value of the business and brand" (id. at 2);

2) Plaintiff failed to establish a causal connection between defendant's alleged conduct and plaintiff's alleged loss in sales (id. at 2–3);

3) Plaintiff failed to provide information that would allow the Court to "make a reasonable and informed assessment of plaintiff's claimed 'future-looking damages,' including the degree to which those damages are attributable to defendant's alleged conduct" and whether plaintiff utilized a reasonable figure to project income growth in the U.S. market (id. at 3 (quoting Pl.'s Mem. Supp. D.J. at 5)); and

4) Plaintiff did not establish that, as a matter of law, it was permitted to recover its supposed "'loss to the business and brand' and its 'forward-looking damages,' given that both figures . . . are premised upon plaintiff's gross income from exports to the United States between the years 2020 and 2022 and appear only to reflect, at their core, a decrease in said income during those years" (id. at 3–4 (quoting Pl.'s Mem. Supp. D.J. at 4–6)).

In light of these issues, the Court ordered plaintiff to file supplemental information and briefing in support of its Motion.  (Id. at 4).  The Court also advised defendant that the Motion would be decided based upon plaintiff's submissions alone "unless defendant request[ed] that a hearing be held, or th[e] Court determine[d] that a hearing is necessary upon review of plaintiff's supplemental submissions."  (Id.)  The Court also set a deadline for defendant to file any such request, as well as any opposition to the Motion.[5]  Plaintiff filed its supplemental papers on December 13, 2023 (ECF No. 18), and defendant failed to file any opposition.

III.  Win Luck NJ's Motions

On January 25, 2024, an entity bearing the same name as the defendant filed a brief letter via its recently retained counsel seeking an opportunity to file a motion to set aside the Clerk's

---

[5] Plaintiff purportedly served a copy of the Inquest Order on defendant on November 3, 2023.  (See ECF No. 16).

entry of default.  (ECF No. 19).  Counsel explained that "Win Luck has meritorious defenses to plaintiff's claims in this case" and "good reasons for why it has been delayed in responding in this lawsuit."  (Id.)  While the Court believed that entity to be the defendant at the time given the absence of any indication to the contrary, the Court now knows that the letter was filed by Win Luck NJ, not Win Luck NY.  The Court ultimately granted leave, and Win Luck NJ filed its Motion to Vacate and Motion to Dismiss on February 2, 2024.  The motions have been fully briefed.  (See ECF Nos. 21–23).

DISCUSSION

I.    Legal Standard[6]

A.  Default and Vacatur

Rule 55 sets forth a two-part procedure for entering a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, the appearing party may seek a default judgment to establish liability and, if proven, damages.  Fed R. Civ. P. 55(b).  Once the Clerk has entered default and before default judgment has been granted, the Court may set aside an entry of default for good cause pursuant to Rule 55(c).  The standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the "excusable neglect" standard for setting aside a default judgment by motion pursuant to Rule 60(b).  Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981).

The main factors for the Court to consider in determining whether to vacate a default are whether the default was willful, whether setting it aside would prejudice the adversary, and

---

[6] Caselaw quotations in this Report and Recommendation accept all alterations and omit internal quotation marks, citations, and footnotes unless otherwise noted.

whether a meritorious defense is presented.  See id. at 277; Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993).  Moreover, "where service of process is insufficient, the court has no power to render judgment and the judgment is void."  Criollo v. NY Fine Interiors Inc., No. 19 CV 5974, 2021 WL 1200318, at *5 (E.D.N.Y. Mar. 3, 2021) (quoting In re Worldwide Web Systems, Inc., 328 F.3d 1291, 1299 (11th Cir. 2003)), report and recommendation adopted, 2021 WL 1193082 (E.D.N.Y. Mar. 30, 2021).  "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service."  Id. (quoting Lian Qing Yu v. 58 Asian Corp., No. 16 CV 7590, 2018 WL 1415214, at *1 (S.D.N.Y. Mar. 20, 2018)).

Other relevant equitable factors may also be considered.  For instance, courts may ask whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result.  Enron Oil Corp. v. Diakuhara, 10 F.3d at 96.  The party seeking relief from an entry of default bears the burden of proof.  Aetna Life Ins. Co. v. Licht, No. 03 CV 6764, 2004 WL 2389824, at *3 (S.D.N.Y. Oct. 25, 2004) (quoting In re Martin-Trigona, 763 F.2d 503, 505 n. 2 (2d Cir. 1985)).  However, defaults are not favored, and doubts are to be resolved in favor of a trial on the merits.  Meehan v. Snow, 652 F.2d at 277 (cautioning that default judgment is an "extreme sanction" that "must remain a weapon of last, rather than first, resort"); see also Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc., No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), adopting report and recommendation, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018).

B.    Default Judgment

If the defaulting party fails to vacate the entry of default pursuant to Rule 55(c), the appearing party may seek a default judgment to establish liability and, if proven, damages.  Fed

R. Civ. P. 55(b).  While the Second Circuit has recognized the pressure on district courts "to dispose of cases that . . . delay and clog [their] calendar[s]" due to the litigants' "disregard of the rules," the Circuit instructs district courts to "maintain a balance between clearing [their] calendar[s] and affording litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96; see also Jeremiah v. 5 Towns Jewish Times, Inc., No. 22 CV 5942, 2023 WL 6593997, at *2 (E.D.N.Y. Aug. 9, 2023), report and recommendation adopted, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023).  Thus, as noted above, defaults are "generally disfavored" and "doubt[s] should be resolved in favor of the defaulting party."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96; see also Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

In deciding whether to grant a default judgment, courts have significant discretion and should consider a number of factors, including:

    a. Whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings");

    b. "[W]hether the grounds for default are clearly established," Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *2 (quoting Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. 1992)); and

    c. "[T]he amount of money potentially involved.  The more money involved, the less justification for entering the default judgment."  Id.

When a defendant defaults, the defendant is typically deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages."  Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3 (quoting Au Bon Pain Corp. v. Artect, Inc., 653

F.2d 61, 65 (2d Cir. 1981)). However, "a district court has discretion . . . to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d at 65. In either event, the Court must review the allegations in the Complaint and/or factual averments to determine if the elements of each claim have been adequately pleaded. See <u>id.</u>; <u>Rolls-Royce PLC v. Rolls-Royce USA, Inc.</u>, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (adopting report and recommendation and explaining that "it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief"). Moreover, the Court may consider whether there are unresolved questions regarding material issues of fact as to liability, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See 10A Charles A. Wright & Arthur R. Miller, <u>Fed. Prac. & Proc.</u> § 2685 (4th ed. 2023) (discussing the aforementioned factors).

II.    <u>Analysis</u>

    A.    <u>Win Luck NJ's Motions</u>

First, the Court turns to Win Luck NJ's Motion to Vacate and Motion to Dismiss. This Court need not engage in an ordinary analysis of either motion because Win Luck NJ is not named as a party to this action, and no default has been entered with respect to nor claims brought against it.

Win Luck NJ filed its motions because, in its view, "it is not clear who the defendant [is]," *i.e.*, whether Win Luck NY or Win Luck NJ is the subject of plaintiff's motion. (Mem. Supp. Vacate[7] at 2). Although it is true that both corporations share the same name, the First Amended Complaint states clearly that the defendant "is a New York corporation" with an

---

[7] Citations to "Mem. Supp. Vacate" refer to Win Luck NJ's Memorandum of Law in Support of its Motion to Vacate Default, filed February 2, 2024. (ECF No. 21-1).

address matching that of the address listed for Win Luck NY in its incorporation papers.  (FAC

¶  8; ECF No. 21-4).[8]  While Win Luck NY's incorporation papers name Yin Fatt Lee and

Christina Xiao Ping Chang as affiliated with the company, the incorporation papers for Win

Luck NJ indicate that the company was incorporated by different individuals—Sheng Lin and

William Pun.  (ECF No. 21-5; see also ECF No. 23 at 1).  Moreover, the address provided for

Win Luck NJ in its incorporation papers does not match that of Win Luck NY.  (Compare, ECF

No. 21-4, with ECF No. 21-5)).  Although Win Luck NJ's address does match the one that

plaintiff identified as a "warehouse" owned by Win Luck NY (FAC ¶ 9), plaintiff has not named

as a defendant any entity located at that address nor provided any support for the assertion that

the warehouse is owned by Win Luck NY—an assertion that Win Luck NJ disputes (see Li

Decl.[9] ¶ 3 (referring to said address as Win Luck NJ's "principal place of business")).

Moreover, Win Luck NJ explicitly disclaims any relationship with Win Luck NY,

stating—via the sworn declaration of its business manager—that "Win Luck NJ and Win Luck

NY are separate unrelated corporations.  Win Luck NJ does no business with Win Luck

NY."  (Id. ¶¶ 6, 10; see also Mem. Supp. Dismiss[10] at 5–6).  Plaintiff maintains that "[t]he

companies bear the same name, and upon information and belief, have the same owner," an

individual named Sheng Lin, "and are the same company."  (Pl.'s Mem. Opp. Vacate[11] at 4, 6).

However, Sheng Lin has filed a declaration disputing that claim, and plaintiff has not produced

any evidence in support of its assertion to the contrary.  (ECF No. 23-1 ¶ 5 (stating, under

---

[8] The original complaint likewise only names Win Luck NY as a defendant.  (Compl. ¶¶ 8–9).
[9] Citations to "Li Decl." refer to the Declaration of Minxiu Li filed in support of Win Luck NJ's motions on February 2, 2024.  (ECF No. 21-3).
[10] Citations to "Mem. Supp. Dismiss" refer to Win Luck NJ's Memorandum of Law in Support of its Motion to Dismiss, dated February 2, 2024.  (ECF No. 21-6).
[11] Citations to "Pl.'s Mem. Opp. Vacate" refer to plaintiff's Memorandum of Law in Opposition to Win Luck NJ's Motion to Vacate Default, filed February 8, 2024.  (ECF No. 22).

penalty of perjury: "I do not own Win Luck NY and it is not the same company as Win Luck NJ")).

The Court thus has no basis to conclude that the entities are related in any legally significant manner, and there is no question as to whom plaintiffs have named as the sole defendant in this action: Win Luck NY.  Even if, as Win Luck NJ suggests, some of the allegations appear to concern the New Jersey entity (see Mem. Supp. Dismiss at 1–2), Win Luck NJ has not been formally joined as a defendant.  The Clerk's entry of default necessarily concerns only the named defendant, Win Luck NY.  Since Win Luck NJ is not a party to this action, and default has not been entered against it, the Court concludes that there is no basis for vacating the Clerk's entry of default.  For the same reason, the Court concludes that Win Luck NJ has no basis for moving to dismiss claims not brought against it.  The Court therefore respectfully recommends that both of Win Luck NJ's motions be denied.[12]

B.    Default Judgment

Having concluded that the Clerk's entry of default should not be vacated, the Court turns to whether default judgment should enter against Win Luck NY with respect to some or all of plaintiff's claims.  In doing so, the Court may accept plaintiff's factual allegations as true, but is not required to do so if, for example, those allegations are conclusory or are contradicted by evidence on the record.  See Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3. Ultimately, the Court finds that plaintiff has not adequately pleaded any of its claims against Win Luck NY.

---

[12] Contrary to plaintiff's assertion, the fact that Win Luck NJ has "now appeared in this action anyway and should be deemed served with all documents on the docket" (Mem. Opp. Vacate at 5) is of no legal significance.  As a nonparty, Win Luck NJ cannot meaningfully appear in this action, and its filing of the Motion to Vacate neither joins it as a defendant nor waives its right to proper service of process should plaintiff later name Win Luck NJ as a defendant in this or any other action.

Plaintiff's claims turn on the core premise that Win Luck NY was responsible for distributing counterfeit products bearing the Tiger Sugar Trademarks, and that said conduct resulted in an injury to plaintiff in the form of lost sales, loss of goodwill, and the like.  (See, e.g., FAC ¶¶ 31–34, 36–40).  The First Amended Complaint contains only a single allegation of specific infringing conduct: that a company by the name of "Win Luck Trading Inc." sold two boxes of counterfeit goods worth $48.00 to I.O.G., a supermarket in Queens, New York.  (FAC ¶ 21–22; Pl.'s Ex. B).  The incorporation records supplied by Win Luck NJ, however, demonstrate that the address listed on the I.O.G. invoice attached to the First Amended Complaint is the address affiliated with Win Luck NJ and not a warehouse owned by Win Luck NY, as plaintiff alleges.  (See Pl.'s Ex. B; ECF Nos. 21-4, 21-5).  It thus appears that the I.O.G. invoice concerns an order of products from Win Luck NJ, not Win Luck NY, undermining plaintiff's allegation that Win Luck NY was responsible for distributing the infringing products to I.O.G.[13]  The First Amended Complaint does not otherwise allege that Win Luck NY is responsible for any other *specific* infringing conduct.  Rather, plaintiff merely alleges that "[d]efendant continued to sell and distribute said counterfeit products in the United States" without alleging approximately when or where those sales occurred, or in what volume.  (FAC ¶¶ 23–25).[14]

Plaintiff's papers in support of the Motion for Default Judgment do not cure this deficiency.[15]  Plaintiff's Memorandum states that it has "learned that the aforesaid counterfeit products are being sold at other locations as well," but provides no information as to the nature

---

[13] As noted above, plaintiff has not provided any evidence suggesting that the New Jersey address listed on the invoice is affiliated with a warehouse owned by Win Luck NY as alleged in the First Amended Complaint, or that Win Luck NJ and Win Luck NY are related.

[14] Plaintiff also has not alleged any facts in support of its assertion that Win Luck NY "import[ed], . . . advertis[ed], [and] promoted . . . [c]ounterfeit [p]roducts bearing [the Tiger Sugar Trademarks]."  (Id. ¶ 36).

[15] Even if plaintiff's motion papers completely resolved the issues identified herein, the Court cannot grant default judgment based solely on allegations of fact not represented in the operative complaint.  See Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings").

of those sales or evidence to support plaintiff's assertions.  Likewise, the Affidavit of Yang Ming Tsung  ("Tsung Aff.") (ECF No. 18), filed by plaintiff in response to the Court's Inquest Order, attaches several exhibits, none of which suffice to establish liability on the part of Win Luck NY.

The Tsung Affidavit includes a chart showing Tiger Sugar Taiwan's sale of goods to the United States in 2020, 2021, and 2022, as well as the total value of those sales converted to U.S. dollars.  (Tsung Ex. 1 (ECF No. 18-1); see also Tsung Aff. ¶ 4).  As further evidence of those sales, plaintiff provided copies of order forms from its distributor (Tsung Ex. 2 (ECF No. 18-2); see also Tsung Aff. ¶¶ 6–7), export declarations filed by Tiger Sugar's distributors for customs purposes (Tsung Ex. 3 (ECF No. 18-3); see also Tsung Aff. ¶¶ 9–11), and photos depicting Tiger Sugar Taiwan's shipment of goods to the United States (Tsung Ex. 4 (ECF No. 18-4); see also Tsung Aff. ¶¶ 12–17).  The Tsung Affidavit and Exhibits may suffice to show a substantial decline in Tiger Sugar Taiwan's sales to the United States between 2020 and 2022.  They do not, however, speak in any way to the cause of those declining sales,[16] the nature of the alleged infringing conduct, or Win Luck NY's role therein.

In sum, neither the First Amended Complaint, plaintiff's original motion papers, nor the Tsung Affidavit provide any facts tying the sale of counterfeit goods to Win Luck NY[17] or a quantifiable measure of the effect of that alleged infringement on plaintiff's business.  Rather,

---

[16] Despite this Court's order to explicitly address the question of whether plaintiff's decline in sales resulted from the alleged infringement activity (see Inquest Order at 2–3), the Tsung Affidavit contains only a single, conclusory statement on the topic (see Tsung Aff. ¶ 25 (stating: "[D]ue to Defendant's sale and distribution of counterfeit products, Plaintiff's company has been substantially affected")).  Similarly,  plaintiff's bald assertion that Taiwan is a comparable market to the United States given the "influence of Asian immigrants" and the fact that "bubble tea culture is trending [in America]" (id. ¶¶ 23–24) does not adequately address the Court's concerns regarding whether the two markets are "comparable . . . for purposes of assessing projected income growth" (Inquest Order at 3).  Plaintiff also failed to address the Court's question of "whether, as a matter of law, plaintiff can recover both what it has dubbed its 'loss to the business and brand' and its 'forward-looking damages.'"  (Id. at 3–4).

[17] Although Win Luck NJ has admitted to previously selling counterfeit products bearing the Tiger Sugar Trademarks (Li Decl. ¶ 7), as noted above, plaintiff has neither alleged nor established that Win Luck NJ and Win Luck NY are related in any way, and Win Luck NJ expressly denies that any such relationship exists (id. ¶¶ 3, 6).

plaintiff is left only with proof of its declining sales and a threadbare assertion that its millions of dollars in purported losses resulted entirely from Win Luck NY's sale of an unknown quantity of counterfeit goods.  In support of that assertion, plaintiff points to a single invoice showing that a *different company* bearing the defendant's name sold $48.00 worth of counterfeit products to a single supermarket in Queens.  (See FAC ¶¶ 21–22; Pl.'s Ex. B).  Yet, plaintiff asks the district court to enter judgment against Win Luck NY and render it liable for $18,985,702.99 in damages.  (Pl.'s Mem. Supp. D.J. at 4; Tsung Aff. ¶¶ 21, 26).  Notwithstanding Win Luck NY's failure to appear in this action, plaintiff's request is simply not supported by the allegations of liability set out in the First Amended Complaint or the evidence presented as to damages.

The bottom line is that plaintiff has failed to adequately allege, let alone establish, that Win Luck NY engaged in any of the infringing conduct of which plaintiff complains.  The Court cannot conclude that plaintiff has pleaded a "valid cause of action" against Win Luck NY, and default judgment thus is not appropriate at this time.  Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.[18]

<u>CONCLUSION</u>

For the foregoing reasons, the Court respectfully recommends that the district court (1) deny Win Luck NJ's Motions; (2) deny plaintiff's Motion for Default Judgment; and (3) grant plaintiff leave to file a Second Amended Complaint addressing the issues described above within thirty days of the district court's order.  The Court further recommends that Frank A. Mazzeo, counsel for Win Luck NJ, be terminated as counsel of record for the defendant Win Luck NY unless he files a separate Notice of Appearance indicating an intent to represent Win Luck NY.

---

[18] In light of this conclusion, the Court does not reach the issues of damages or attorney's fees presented in plaintiff's Motion.

Plaintiff is directed to serve a copy of this Report and Recommendation on Win Luck NY and Win Luck NJ and file proof of service on the docket immediately thereafter. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED.**

Dated: Brooklyn, New York
March 19, 2024

Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York